**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DOUGLAS EDWARD GROCE,**

    Petitioner,

v.                                                       Case No. 8:13-cv-2332-T-35JSS

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    Respondent.
_____/

## ORDER

This cause comes before the Court on Douglas Edward Groce's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. (Doc. 1) The Respondent, Secretary of the Florida Department of Corrections, filed a response in opposition to the petition. (Doc. 10) Upon consideration of the petition, and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition lacks merit and must be denied.

**I.    BACKGROUND**

Groce was convicted after a jury trial of trafficking in methamphetamine weighing 28 grams or more, possession of cannabis in excess of 20 grams, possession of drug paraphernalia, and resisting an officer without violence. (Doc. 12, Ex. 4) Groce was sentenced to 30 years' imprisonment. (Doc. 12 at Ex. 6) The state appellate court *per curiam* affirmed Groce's conviction and sentence. (Doc. 12 at Ex. 10)

Groce's first motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 was dismissed. (Doc. 12 at Exs. 12, 13) His second Rule 3.850 motion

was denied. (Doc. at Exs. 14-16) Groce appealed that ruling, and the state appellate court *per curiam* affirmed. (Doc. at Exs. 17, 18)

Groce then filed a third Rule 3.850 motion, alleging that the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. at Ex. 20) He argued that the State failed to disclose that Phillip Coatney, who was present at the scene of Groce's crime, was a paid confidential informant. (*Id.*) The state court denied Groce's motion. (Doc. 12 at Ex. 23) The state appellate court *per curiam* affirmed that decision. (Doc. at Ex. 24) It is the denial of this third Rule 3.850 motion that forms the basis of Groce's federal habeas petition.

Groce raises two grounds for relief in his federal habeas petition. In Ground One, Groce re-asserts that his constitutional rights under *Brady* were violated when the State failed to disclose that Coatney was a paid confidential informant. (Doc. 1 at 5-6) In Ground Two, Groce asserts that he was denied the right to effective assistance of counsel when his counsel failed to convey a plea offer to him. (Doc. 1 at 6) The Court dismissed Ground Two of Groce's petition as time-barred. (Doc. 16)

In a subsequent order, the Court ruled that Ground One of Groce's petition was timely. (Doc. 20) The Court further ruled that Groce had satisfied the first of three components of a *Brady* violation. (*Id.*) Specifically, the Court ruled that the alleged fact that Coatney was an informant, if true, would qualify as evidence favorable to Groce's defense.[1] (*Id.*) Accordingly, the remaining issue before the Court is whether Groce has demonstrated that the state court's application of the second and third components of a *Brady* violation was objectively unreasonable, such that he is entitled to habeas relief.

---

[1] The Court hereby incorporates by reference the findings and rulings reached in its prior orders. (Docs. 16, 20)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1364 (11th Cir. 2009). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y, Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). Under AEDPA, a federal court shall not grant habeas relief on claims that were previously adjudicated in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Under AEDPA, the Court's standard of review is "greatly circumscribed and is highly deferential to the state courts." *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002). AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "The focus . . . is on whether the state court's application of clearly

established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## III. DISCUSSION

### A. Groce's *Brady* Claim

Groce contends that, under *Brady*, his Sixth and Fourteenth Amendment rights were violated because the State withheld exculpatory evidence. Specifically, Groce asserts that the State withheld the fact that Phillip Coatney, who was present at the crime scene, was a paid confidential informant for law enforcement. (Doc. 1 at 4) He asserts that Coatney "brought the methamphetamine to the motel room with the intent to set [Groce] up, and to avoid criminal charges." (*Id.*) Groce argues that evidence that Coatney was an informant "would have supported [his] defense that the methamphetamine was brought to the motel by Coatney." (*Id.*) Furthermore, he argues that the state court should have held an evidentiary hearing on the issue. (Doc. 26 at 2)

4

To support his assertions, Groce relies on the affidavit of Paul T. Anderson, whom Groce states he met in prison.[2] In his affidavit, Anderson states that he saw Coatney talking to two deputies. (Doc. 17) The deputies instructed Coatney to go to a hotel room and "get the black guy in that room to handle the drugs." (*Id.*) The deputies then gave Coatney the drugs and followed him in his truck. (*Id.*) Anderson states that he personally knows Coatney to be a paid informant and that he would be willing to testify to these facts. (*Id.*) The affidavit is not dated or sworn. (*Id.*)

The state court rejected Groce's *Brady* claim after reviewing the record. (Doc. 12, Ex. 23) In its summary order, the state court agreed with, adopted, and incorporated the State's arguments, citations, and attachments to its response in opposition to Groce's motion. (*Id.*)

Groce appealed, and the state appellate court affirmed the state trial court's denial of postconviction relief without discussion. (Doc. 12, Ex. 24) This summary decision qualifies as an adjudication on the merits and warrants deference under Section

---

[2] Groce did not attach the Anderson affidavit to his Section 2254 petition. The State also did not initially include the affidavit with the state court record that it submitted in support of its response in opposition to the Section 2254 petition. In his state motion for post-conviction relief, Groce referenced the Anderson affidavit as Exhibit A. Therefore, the Court assumes the affidavit—which bolsters Groce's claim—was part of the state court record. Accordingly, the Court directed the State to file the affidavit, and it complied. (Doc. 16, 17)

The Court also directed the State to disclose whether Coatney was in fact acting as an agent of the police during Groce's arrest. (Doc. 20) In response, the State filed affidavits of the two detectives involved in the case, and both swore that Coatney was not a confidential informant. (Doc. 21) These affidavits, which are dated October 5, 2016, were not part of the record at the time the state court denied Groce's Rule 3.850 motion. Review of a state court decision "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Accordingly, the Court has not considered the two detectives' affidavits in reaching its decision.

2254(d)(1). *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002) (explaining that "the summary nature of a state court's decision does not lessen the deference that it is due"). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Accordingly, the Court looks through the appellate court's affirmance to the state trial court's decision.

### B. The State Court's Decision

The state court assumed, for purposes of ruling on Groce's Rule 3.850 motion, that Coatney was in fact a paid confidential informant and that this fact was withheld from Groce. The state court then summarized the evidence presented at trial. The State presented evidence that a detective investigating drug sales looked through the open door of Groce's hotel room and saw drugs on a table where Groce and another man were seated. (Doc. 12, Ex. 3 at 78-81) The detective entered the hotel room, and Groce stood up and immediately picked up a bag of drugs off the table and threw it into the corner of the room. (*Id.* at 82) Groce put another large bag of drugs in his mouth and began walking in circles. (*Id.* at 83-84) Groce reached for a blue box under a mattress, and the detective secured Groce with a taser and chemical agent. (*Id.* at 85-87, 89) At the scene, law enforcement discovered $6,000 in a sock inside Groce's pants, $1,000 on the table, and some cards with names and dollar amounts inside Groce's wallet. (*Id.* at 91, 99-100, 109-10, 111-12) The money discovered in Groce's pants field-tested positive for methamphetamine residue. (*Id.* at 121-22) Law enforcement also discovered a scale with methamphetamine residue, a blue box that contained cannabis and another scale

6

with cannabis residue, and methamphetamine and a straw on the dresser by the TV. (*Id.* at 91, 99-100, 107) Although the State listed Coatney as a witness, it did not call him to testify.

Groce testified that he was sitting at the table with Coatney and ironing his pants when the detective entered the hotel room. (*Id.* at 158) Groce stood up and noticed methamphetamine on the table that had not been there before the detective arrived. (*Id.* at 160) He testified that, although he did not know it at the time, Coatney brought the drugs into the room. (*Id.* at 165, 173) He testified that as the detective entered the room, Coatney swept a bag of methamphetamine off the table. (*Id.* at 161) He testified that he was scared, so he grabbed a second bag of methamphetamine off the table and put it in his mouth. (*Id.* at 162-63) He testified that he was nervous, acting erratically, and pacing the room. (*Id.* 164) He testified that he knew he had made a mistake by putting the drugs in his mouth. (*Id.* at 163) He further testified that the $6,000 that was recovered from his pants was from a FEMA check that he had received. (*Id.* at 164-65) He testified that the cards found in his wallet were not drug ledgers, but instead were for betting on football games. (*Id.* at 165) He testified that although he saw Coatney entering the hotel room, carrying the blue box, and using methamphetamine in that room, he did not know that Coatney brought the methamphetamine and cannabis into the room. (*Id.* at 166)

After reviewing the evidence presented at trial, the state court ruled that any evidence that Coatney was a paid confidential informant "could not have caused this case to be held in a different light or to have altered the verdict." (Doc. 12, Ex. 3) It reached this decision based on the State's strong evidence, Groce's inconsistent and self-contradictory testimony, and his admission that he put the drugs in his mouth. (*Id.*) The

7

state court reasoned that Groce presented evidence that it was Coatney who brought the drugs into the room, but the jury obviously discounted that theory. (*Id.*)

Finally, the state court determined that an evidentiary hearing was not necessary because it already had an ample basis on which to make its decision. (*Id.*) The state court reasoned that Groce's entire argument was dependent on facts already in the record and his allegations about Coatney being a paid confidential informant had been accepted as true. (*Id.*)

### C. Whether the State Court's *Brady* Analysis Was Objectively Unreasonable

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To establish a *Brady* violation, a petitioner must show that (1) the evidence is favorable to the accused, either because it is exculpatory or it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Suppressed evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Groce has not demonstrated that the state court's *Brady* analysis was objectively unreasonable. The state court assumed that Coatney was a paid confidential informant who brought drugs into the hotel room with the intent to set up Groce and avoid criminal charges, and that the State had not disclosed this fact. Even under this assumption, it

8

was objectively reasonable for the state court to rule that the withheld evidence was not material and would not have altered the verdict. The State presented unrefuted evidence of Groce's guilt, including that law enforcement discovered methamphetamine residue on the large amount of money found in Groce's pants, a scale with methamphetamine residue, and methamphetamine and a straw on the dresser. Significantly, Groce himself admitted to possession and control of the drugs when he testified that he picked up a bag of methamphetamine and put it in his mouth. He also admitted that this was a mistake, and that he was nervous and acting erratically. Additionally, Groce's testimony that he saw Coatney entering the hotel room, carrying the blue box, and using methamphetamine in that room, but that he did not know that it was Coatney who brought the drugs into the hotel room was self-contradictory and presumably rejected by the jury. The Court's review of the state court's decision is highly deferential, and with these unrefuted facts, the Court cannot conclude that the decision to deny the Rule 3.850 motion was objectively unreasonable.

Finally, the state court's decision not to hold an evidentiary hearing was objectively reasonable. In reaching its decision, the state court assumed facts in Groce's favor—that Coatney was a paid informant and that the State had withheld this fact. Additionally, all of the facts that supported Groce's argument, including the Anderson affidavit, were already a part of the record. There was therefore no need for the state court to hold an evidentiary hearing to make a factual determination regarding Coatney's status. Groce has not provided any argument or facts to show that this decision was objectively unreasonable, and therefore, it is owed deference.

### IV. CONCLUSION

Accordingly, Groce's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**. The Clerk is directed to enter judgment against Groce and to **CLOSE** this case.

**IT IS FURTHER ORDERED** that Groce is not entitled to a certificate of appealability. To obtain a certificate of appealability, the petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because Groce fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, he is not entitled to a certificate of appealability or to appeal *in forma pauperis*.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 14th day of February, 2020.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE